| | | |
|---|---|---|
| **UNITED STATES DISTRICT COURT** | | **EASTERN DISTRICT OF TEXAS** |

UNITED STATES OF AMERICA §
§
*versus* § CASE NO. 4:13-CR-160(1)
§
DANIEL RANFERY MORALES-GUTIERREZ §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Daniel Ranfery Morales-Gutierrez's ("Morales-Gutierrez") Motion for Compassionate Release In Accordance to 18 U.S.C. § 3582(c)(1)(a) Based on Extraordinary and Compelling Reasons Related to Unprecedented COVID-19 Virus Pandemic (#228), wherein Morales-Gutierrez requests that the court reduce his sentence to time served and release him from prison. The Government filed a response in opposition (#230). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, Probation's recommendation, the Government's response, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.  Background

On August 15, 2013, a federal grand jury sitting in the Eastern District of Texas returned a First Superseding Indictment charging Morales-Gutierrez and four others with participating in a Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine, in violation of 21 U.S.C. § 846. On May 12, 2015, Morales-Gutierrez pleaded guilty to Count One of the First Superseding Indictment, admitting that he was responsible for distributing at least 45 kilograms of a mixture or substance containing a detectable amount of methamphetamine or at least 4.5 kilograms of methamphetamine (actual). On November 9, 2015, the court sentenced Morales-Gutierrez to 235

months' imprisonment, followed by a 5-year term of supervised release. He is currently housed at the Federal Correctional Institution Beaumont—Low in Beaumont, Texas ("Beaumont—Low"). Morales-Gutierrez's projected release date is April 7, 2030. As of August 7, 2020, Bureau of Prisons ("BOP") statistics indicate that 30 inmates and 1 staff member are currently positive for COVID-19 at Beaumont—Low, while 473 inmates have recovered, and no one has succumbed to the disease.

II. Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release

was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, No. 20-1723, 2020 WL 4048690, at *1 (3d Cir. July 20, 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his

administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Morales-Gutierrez maintains that he first submitted a request for compassionate release to prison officials on June 9, 2020, and subsequently requested that the warden of Beaumont—Low file a motion for compassionate release on his behalf on July 5, 2020, due to his health conditions of diabetes and colon cancer and his testing positive for Coronavirus Disease 2019 ("COVID-19"). Probation confirmed that the warden received Morales-Gutierrez's request on July 5, 2020, but denied it on July 16, 2020, indicating that Morales-Gutierrez did not meet the criteria for compassionate release because he had neither an incurable, progressive illness nor a debilitating injury from which he would not recover.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also

consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). In his current motion, Morales-Gutierrez, age 30, contends that he suffers from Diabetes Mellitus Types I and II and that he has been diagnosed with Colon Cancer, adding that he needs close monitoring. In addition, he reports that he tested positive for COVID-19 on June 29, 2020, and was placed in quarantine.

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Morales-Gutierrez's medical records confirm that he tested positive for COVID-19 on June 29, 2020, at which time he reported having experienced night sweats and headaches in the back of his head for two to three days. On July 2, 2020, he reported having a sore throat, but his temperature was normal. During a follow-up visit on July 8, 2020, Morales-Gutierrez told his physician that he was doing well, had no new complaints, and denied any new symptoms; moreover, he no longer had a headache, his lungs were clear, and he was ambulating comfortably. By July 28, 2020, Morales-Gutierrez was released from isolation, as he was asymptomatic, afebrile, and his case of COVID-19 was resolved. The nurse practitioner commented, "The patient is not severely immunocompromised and did not have a severe illness requiring hospitalization."

With regard to Morales-Gutierrez's claim that he suffers from colon cancer, a medical record dated October 28, 2019, reveals that he had a colonoscopy on September 12, 2019, which showed that he had a large polyp in his colon removed and was diagnosed with adenocarcinoma in situ, Stage 0. His physician noted:

> Stage 0 Colon Cancer
>
> When abnormal cells are found in the wall, or mucosa, of the colon, it is considered Stage 0 colon cancer. This is also called carcinoma in situ.
>
> Treatment: A polypectomy is performed during a colonoscopy and may remove all of the malignant cells. If the cells have affected a larger area, an excision may be performed. An excision is simply a minor, minimally invasive surgery that can often be performed during the colonoscopy.
>
> Surveillance Colonoscopy is all that is needed now!

As for diabetes, a medical record dated April 2, 2020, confirms that Morales-Gutierrez has been diagnosed with Type I and Type II Diabetes Mellitus, which is controlled by oral medication and insulin injections twice per day. When interviewed in connection with the preparation of his

Presentence Investigation Report ("PSR") in September 2015, Morales-Gutierrez reported that he had previously been diagnosed with diabetes and hypertension for which he was prescribed medication. Nevertheless, these conditions did not appear to hamper his pursuit of drug-trafficking activities. The April 2, 2020, medical record indicates that Morales-Gutierrez's hypertension has been resolved, but references "Patient's noncompliance with other medical treatment and regimen." A December 7, 2017, entry states, "not following his DM 2 diet."

Probation contacted counsel for Beaumont—Low, who verified Morales-Gutierrez's medical conditions and advised that he falls within the Care Level 2 category. Counsel explained that Care Level 2 patients are stable outpatients who require clinical evaluations monthly to every 6 months and that their medical conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring, while enhanced medical resources, such as consultation or evaluation by medical specialists, may be required periodically. Hence, it appears that Morales-Gutierrez's medical conditions are being properly managed with medication, routine medical care, and monitoring. Probation's investigation confirmed that, as a Care Level 2 inmate, he "will continued to be closely monitored for the possible formation of any new polyps, and appropriate medical treatment will be provided by the Bureau of Prisons Medical staff." Thus, Morales-Gutierrez's medical summary does not meet the criteria listed in the guidelines. Morales-Gutierrez's medical conditions are not terminal, nor do they substantially diminish his ability to provide self-care. He is ambulatory, and, according to a medical record dated May 3, 2020, he is assigned to work in the laundry at the facility.

Morales-Gutierrez's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary

and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Morales-Gutierrez for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Morales-Gutierrez's situation. Although Morales-Gutierrez expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United*

8

*States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). In fact, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Here, according to the medical records, Morales-Gutierrez already contracted the virus, experienced nights sweats, headaches, and a sore throat, and was placed in isolation. He was treated, his medical condition was closely monitored, and he recovered fully without requiring hospitalization. Therefore, it appears that BOP responded appropriately and ensured that Morales-Gutierrez received the necessary treatment to survive and recover from the disease despite his underlying medical conditions. Thus, Morales-Gutierrez has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Morales-Gutierrez's offense of conviction entails his playing a key role in a drug trafficking conspiracy involving the distribution of multiple kilograms of methamphetamine in the Dallas area. He admitted that his role in the conspiracy was to supply coconspirators with kilogram quantities of methamphetamine from various sources for further distribution in the Eastern and Northern Districts of Texas. During the execution of a search at his residence, agents discovered clandestine methamphetamine laboratories in his bedroom and the kitchen. An electric fan was found drying methamphetamine stored in strainers underneath the kitchen sink. Gallon and half-gallon containers held methamphetamine in various stages of completion during the manufacturing process. Law enforcement officers ultimately recovered more than 2 kilograms of d-methamphetamine "ice" and more than 3.8 kilograms of methamphetamine (actual) from the residence, along with digital scales, a drug ledger, and drug proceeds ($4,117). A shotgun was also located inside his closet. Morales-Gutierrez has prior convictions in California for possession of a controlled substance and transfer or sale of a controlled substance involving the distribution of 5 kilograms of cocaine. According to the PSR, he also has a history of poly-substance abuse, drinking up to 20 beers daily or until intoxicated on weekends, smoking marijuana daily, and snorting cocaine frequently from the age of 16 until he was arrested at age 22 for the instant offense. Furthermore, Morales-Gutierrez has served only 86 months, or approximately 37%, of his 235-month sentence. In view of the nature and circumstances of the offense, his role in the conspiracy, the amount of methamphetamine involved, his criminal history, and his history of substance abuse, the court cannot conclude that Morales-

Gutierrez would not pose a danger to the safety of any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,444 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot

11

take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Morales-Gutierrez's track record is similarly a poor one.

In short, Morales-Gutierrez has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.  Conclusion

In accordance with the foregoing analysis, Morales-Gutierrez's Motion (#228) is DENIED.

SIGNED at Beaumont, Texas, this 7th day of August, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE